UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 1:07CR 196 ERW |
| | ) | |
| ARTHUR L. IVY, | ) | |
| | ) | |
| Defendant(s). | ) | |

## REPORT AND RECOMMENDATION

### Factual Background

On October 8, 2007, several law enforcement officers from the Cape Girardeau area were engaged in attempting to purchase cocaine base, or crack cocaine, in the Cape Girardeau area. The officers were using the services of a Confidential Informant (CI) to make these purchases. (Tr. 3-5)

Officers transported the CI to the area of 900 South Ellis Street, then the CI exited the vehicle and walked up to two individuals. One of those individuals was later identified as Arthur Ivy. Ivy was wearing a red tee shirt and shorts. The other man was later identified as Joseph Cannon. Officers kept the CI under visual surveillance while the CI contacted Ivy and Cannon. (Tr. 6-8)

The CI purchased a small quantity of cocaine base from Cannon in exchange for $20. The CI then left to meet with the officers. The CI gave the officers the crack cocaine and told them what had happened. (Tr. 5-8)

The officers decided to make contact with Ivy and Cannon. One of the policemen, Officer Burchell, drove his vehicle near Ivy and Cannon. When Burchell exited his car, both Ivy and Cannon ran. Officer Daniel Seger and Burchell chased after both men, but lost sight of the two men after a short distance. Cannon was eventually apprehended a short distance away. (Tr. 9, 10)

Officer Paul Zajicek was helping search for the men. A citizen approached Zajicek and stated that a black male wearing a red tee shirt had run into a house at 907 South Ellis. The citizen stated that he saw Ivy throw down a small plastic bag in the middle of the back yard of that house and a handgun over by the fence next to the garage at 917 South Ellis. Zajicek walked over to the back yard and found a small baggie of crack cocaine and a handgun by the fence as described by the citizen. The citizen did not want his name disclosed. (Tr. 24-27)

The officers located a resident of the house at 907 South Ellis and obtained a consent to search that house. Officer Price entered the bedroom and saw a red shirt lying on a bed still moist, sweaty, and damp to the touch. Ivy was discovered in a closet in the same room. (Tr. 11, 12)

The officers then decided to attempt to compare any DNA that might be on the plastic baggie and the firearm to Ivy's DNA. Zajicek prepared an affidavit for a state search warrant to obtain buccal swabs from Ivy for a DNA comparison. (Tr. 27-30)

That warrant was signed and the DNA sample was obtained. Ivy seeks to suppress the evidence from the buccal swab obtained from Ivy and the lab report giving the results of the DNA comparison.

## Discussion

In Defendant's Motion to Suppress Evidence, "defendant seeks herein to suppress the buccal swabs seized from him on October 8, 2007, and the resulting laboratory report issued by the Missouri Highway Patrol." (Doc. #36, 1)

As grounds for seeking the suppression, the defendant argues that the Affidavit submitted in support of the search warrant authorizing the buccal swabs contains statements that were improperly included in the affidavit. Defendant alleges that because information included in paragraphs 6 and 7 of the affidavit were provided by an anonymous source they should not have been contained in the

affidavit and, consequently, should not have been considered by the judge issuing the search warrant. The defendant urges further that in the absence of the improperly included information in paragraphs 6 and 7, the remaining facts alleged in the affidavit are insufficient on their face to warrant a finding of probable cause.

## Probable Cause

The United States Supreme Court has defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983).

The standard to be used by a judge reviewing the decision to issue a search warrant is different from the standard to be used by the judge who issues the search warrant. As the Supreme Court stated in Gates more fully, Id.:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Jones v. United States, 362 U.S., at 271, 80 S.Ct., at 736.

The Supreme Court rejected the prior tests required by Spinelli v. United States, 393 U.S. 410, 898 S.Ct. 584 (1969), finding that "the complex superstructure of evidentiary and analytical rules that some have seen implicit" in the Spinelli decision cannot be reconciled with the fact that many warrants quite properly are "issued on the basis of non-technical, common sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings." Id. at 235, 2331. The Court offered the following caution to reviewing courts, Id. at 236, 2331:

> Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." Spinelli, supra, 393 U.S., at 419, 89 S.Ct., at 590. "A grudging or negative attitude

by reviewing courts toward warrants," <u>Ventresca</u>, 380 U.S., at 108, 85 S.Ct., at 745, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common sense, manner." <u>Id</u>., at 109, 85 S.Ct., at 746.

Probable cause is

a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons. As we said in <u>Adams v. Williams</u>, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972): "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." Rigid legal rules are ill-suited to an area of such diversity.

<u>Gates</u>, 462 U.S. at 232, 103 S.Ct. at 2329.

The Supreme Court found, 462 U.S. at 231, 103 S.Ct. at 2328, quoting from <u>Brinegar v. United States</u> (citation omitted), that the probable cause standard is a "practical, nontechnical conception" and "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

As the Supreme Court stated in <u>Gates</u>, our review of the sufficiency of the affidavits should not take the form of a <u>de novo</u> review.

### **Paragraphs 6 and 7 of the Affidavit**

A critical question is whether paragraphs 6 and 7 should have been included in the affidavit. They follow:

6. Arthur Ivy was arrested by Officer Rick Price a short time later. He was located inside the residence at 907 S. Ellis, in Cape Girardeau. Ivy was located with the assistance of an anonymous source who stated he had observed him run inside the residence at 907 S. Ellis.

7. The anonymous source approached me while I was in the rear of 907 S. Ellis and stated that he observed Arthur Ivy drop a bag in the backyard of 907 S. Ellis while he was fleeing from the officers. I found the suspect bag and it contained

- 4 -

several rocks of suspected crack cocaine. The anonymous source also informed me that he observed Ivy drop a gun by the fence near the front of the garage at 917 S. Ellis, which is located right next door to 907 S. Ellis, where Ivy was found. I found the gun, a Taurus 9 mm. semi-automatic handgun, where the anonymous source said Ivy had dropped it.

Defendant's principal objection is that the information provided to the affiant, Officer Paul Zajicek, came from some one Officer Zajicek described as an "anonymous source," who did not wish to give his name and about whom Officer Zajicek knew very little.

As Officer Zajicek states, he was approached by the person who did not want to provide his name, but who volunteered that he had observed a person drop a bag in the middle of the back yard of 907 S. Ellis while he was running from the police. At that time, Officer Zajicek was in the rear of 907 S. Ellis. Officer Zajicek looked for and found the bag which contained several rocks of suspected crack cocaine. The anonymous source also told Officer Zajicek that he saw the person who was running from officers drop a gun by the fence near the front of the garage at 917 S. Ellis which is located, according to the affidavit, right next door to 907 S. Ellis. Officer Zajicek went and looked and found the gun, a Taurus 9 mm. semi-automatic handgun, where the anonymous source said the person fleeing had dropped it. Officer Zajicek also was told that the anonymous source had observed the man they were chasing run into the residence at 907 S. Ellis.

As the Supreme Court stated in Illinois v. Gates, 462 U.S. at 233, 234, 103 S. Ct. at 2330,

Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity–which if fabricated would subject him to criminal liability–we have found rigorous scrutiny of the basis of his knowledge unnecessary. Adams v. Williams, supra. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.

Obviously, the anonymous source was a citizen who appeared to be public-spirited, risking himself in the neighborhood by coming to the police, who gave detailed information to Officer Zajicek

which was based, obviously, on firsthand observation.  The government points to two Eighth Circuit cases involving anonymous sources, that is, persons who gave information and wished to remain anonymous:  United States v. Jackson, 898 F.2d 79 (8th Cir. 1990), and United States v. Robertson, 39 F.3d 891 (8th Cir. 1994).  The anonymous source in Jackson in his call to the police stated that he had gone to get his daughter who was addicted to drugs away from a house where she had been and he had observed what his daughter told him were marijuana plants at the house.  The caller also provided the name of the resident of the home, Robert Jackson.

The officer checked with the City Utilities and verified that Robert Jackson did receive utility service at the address given by the caller.  The officer also checked to make sure there was a home at the described location.  A state circuit court judge issued the search warrant.  When Jackson was charged in federal court, he filed a motion to suppress the evidence seized from his home.  The motion alleged that a number of items stated by the anonymous caller were false.  The district court denied the defendant's motion to suppress.  The district court found that even if some of the information provided by the anonymous caller was false, the application set forth sufficient information from which a fair probability was reached that contraband would be found at the location described.  The court noted that the informant detailed the location and size of the marijuana plants, the owner of the home and that police corroborated the only information which could be corroborated without intrusion--the occupant's name.  Further, the Court held that the police officers were entitled to a good faith belief in the validity of the warrant based on the corroboration provided by a second phone call.  The Court of Appeals found that the anonymous telephone tip went so far as to exhibit an adequate basis of knowledge, citing Gates.  The caller identified the source of his tip, he gave the height of the marijuana plants, their location and the location of sacks of marijuana and the name of the occupant.  The Court of Appeals found "The information has the richness and detail of a firsthand

observation. 898 F.2d at 81, citing Gates. The Court of Appeals further found that the police officer confirmed the information which was susceptible to confirmation by a call to the utility company and a personal external observation of the house. The Court of Appeals concluded that a neutral and detached magistrate could make a practical, commonsense decision that probable cause existed at the time the warrant was issued.

The information provided in United States v. Robertson, 39 F.3d 891, also was volunteered by a citizen who did not wish to become involved in the resulting criminal investigation. The informant provided detailed factual information concerning marijuana growing in the suspect's trailer, his prior harvesting and sale of marijuana and the plans of the suspect to harvest and sell the current indoor crop. The Robertson case pointed to the earlier Jackson case remarking about "the richness and detail of a firsthand observation." The agent who had taken the anonymous call met with the informant to question the informant face to face and to determine whether he or she appeared to be a credible person. The Robertson case found "that firsthand observation gives greater weight to Agent Thom's decision to rely on the informant's information." Id. An additional independent verification of the tip came when the agent observed foil over two trailer windows and used forward-looking infrared device readings which showed a high degree of thermal energy escaping from the trailer. ( The Robertson case was decided before Kyllo v. United States, 533 U.S. 27 (2001), in which the Supreme Court held that the police could not conduct a search with the use of a thermal imager.) The agent also verified the trailer's utility account was in the name of Bobzin, one of the persons the informant said was growing marijuana. The Court quoted from its earlier case of United States v. Reiner Ramos, 818 F.2d 1392, 1397 n. 7 (8th Cir. 1987), to the effect that "The corroboration of minor, innocent details can suffice to establish probable cause." The Court of Appeals in Robertson concluded that the detailed information supplied by a previously unknown informant, who met with

Agent Thom but requested anonymity, together with the corroborating information subsequently obtained, furnished probable cause to issue a warrant to search the defendant's trailer.

In the instant case there was no reason to suspect that the anonymous source speaking to Officer Zajicek was telling anything but the truth. What he said could be quickly and easily verified. Officer Zajicek did so by finding the bag described by the anonymous source and the 9 mm. semi-automatic handgun. The most significant verification of what the anonymous source told Officer Zajicek was that other officers found the defendant inside the residence of 907 S. Ellis where the source had said he saw the defendant go. Obviously, the CI was an eyewitness. "An informant who alleges he is an 'eyewitness' to an actual crime perpetrated demonstrates sufficient 'reliability' of the person." McCreary v. Sigler, 406 F.2d 1964, 1969 (8th Cir. 1969) (probable cause found even under older, stricter Aquilar-Spinelli test.); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329 (1959).

The court finds that the information contained in paragraphs 6 and 7 of the affidavit was reliable and was properly included in the affidavit of Officer Zajicek.

### The Affidavit as a Whole

The defendant alleges in his memorandum that even if the improperly-included information in the affidavit is considered along with the other facts alleged in the affidavit, the affidavit was insufficient on its face to warrant a finding of probable cause.

The court will examine the affidavit as a whole. Officer Zajicek under oath stated that he has been a police officer with the Cape Girardeau Police Department for approximately eight years. Officer Zajicek is the Evidence Technician at the Police Department with training in forensics and crime scene investigations. He stated that he is trained in collecting DNA samples left at crime scenes and DNA standards collected from suspects. Officer Zajicek stated in the affidavit that he had probable cause to believe that evidence pertaining to the crimes of sale of a controlled substance,

trafficking in the second degree, and felon in possession of a firearm are presently located in and on the person of Arthur Lajuan Ivy. The evidence to be searched for is a DNA standard to be taken from the defendant by using two buccal swabs to swab the inside of the cheek. The affidavit refers to the fact that there is probable cause to believe that the defendant dropped a Taurus 9 mm. semi-automatic handgun which Officer Zajicek seized from the back yard of 917 S. Ellis in Cape Girardeau, Missouri. The affidavit referred to the controlled buy of crack cocaine by the Cape Girardeau Drug Task Force using a confidential informant on October 8, 2007, who purchased a $20.00 rock of crack cocaine from Joseph Cannon and the defendant in the 900 block of South Ellis. (Although the evidence indicated that the actual transaction was between Joseph Cannon, Arthur Ivy's co-defendant, and the confidential informant, Cannon and Ivy were together during the sale.)

As a result of the controlled buy, a Cape Girardeau Police Officer was requested to stop the two subjects, Cannon and Ivy, and detain them for investigation. When the officer approached the two subjects, both Cannon and Ivy "took off running."

The court has already referred to paragraphs 6 and 7 which follow the above listed information, indicating that as a result of the information provided by the anonymous source, Ivy was located inside the residence at 907 S. Ellis, which is next to 917 S. Ellis where the pistol was found as described by the anonymous source.

The court has already found that the information provided by the anonymous source is relevant and should have been considered by the judge who issued the search warrant. The anonymous source had told the officer who was obviously, along with other police officers, looking for suspects, that he had seen the defendant run into the residence of 907 S. Ellis. He had seen Ivy wearing a red shirt "fleeing from the officers." And the anonymous source observed Ivy drop a plastic baggie in the back yard of 907 S. Ellis, which when Officer Zajicek inspected it, contained

several rocks of suspected crack cocaine. The anonymous source also told Officer Zajicek that he saw Ivy drop a gun by the fence near the front of the garage at 917 S. Ellis, which is located right next door to 907 S. Ellis where Ivy was found. Following the anonymous source's directions, besides the bag containing crack cocaine, Officer Zajicek also found the Taurus 9 mm. semi-automatic handgun.

The affidavit continues that as the Evidence Technician of the Cape Girardeau Police Department with training in forensics and crime scene investigation, Officer Zajicek was also trained in collecting DNA samples left at crime scenes and DNA standards collected from suspects. Officer Zajicek stated that the preferred method of collecting DNA samples at this point in time is to take a buccal swab from the mouth of a suspect. Officer Zajicek described this method as a "quick and non-intrusive way to collect DNA." He stated that two swabs are generally taken for testing. The swabs are then separately packaged and preserved. Cells from the inside of the cheek of the suspect contain DNA and the person's DNA genetic code can be determined from these samples. Officer Zajicek stated in the affidavit that he had performed this procedure many times and it is painless and takes less than one minute if the subject is cooperative. Officer Zajicek requested that the evidence sought by the search warrant consisting of a DNA standard be taken from Arthur Lajuan Ivy by using two buccal swabs to swab the inside of his cheek. The swabs from the inside of Ivy's cheeks would be used for comparison to the DNA profiles taken from the gun and crack cocaine baggie which were seized in this case.

The information contained in Officer Zajicek's affidavit relates that a certified confidential informant, after being prepared by being searched and provided with purchase money, bought a $20.00 rock of crack cocaine from one of two persons standing together on the street in an area targeted by the Bootheel Drug Task Force for a controlled buy of crack cocaine. It was the area that

was targeted. The confidential informant was placed in the area in an attempt to get a sale from anyone. Neither Cannon nor Ivy were specifically known by the confidential informant, nor were they specifically targeted.

When an officer was directed to contact the two suspects, they ran. This provides additional information supporting probable cause. See Illinois v. Wardlow, 528 U.S. 119, 124-25, 120 S.Ct. 673, 676 (2000)(defendant's unprovoked flight from officers in area of heavy narcotics trafficking supported reasonable suspicion that defendant was involved in criminal activity and justified the stop). There was eyewitness information which was substantiated by inspection by Officer Zajicek that the defendant had dropped a bag containing crack cocaine as well as the information of the anonymous source was further verified when the defendant was found hiding in the home where the anonymous source said he fled to.

Based on the totality-of-the-circumstances, the court finds that the affidavit states probable cause that evidence of Defendant Arthur Lajuan Ivy's DNA within his mouth would provide evidence of his possession of the firearm and the crack cocaine found in the bag dropped in the back yard of 907 S. Ellis by means of DNA testing.

For all the foregoing reasons, the affidavit presented to Judge Gary Kamp on October 9, 2007, provided "a fair probability that contraband or evidence of crime [would] be found in the particular place." Gates, 462 U.S. at 238, 103 S.Ct. at 2332. Consequently, this court finds that the search warrant in question was issued based on probable cause. The DNA information obtained as a result of the use of the buccal swabs is admissible into evidence and should not be suppressed. The same is true of the laboratory report issued by the Missouri Highway Patrol if properly qualified by an expert at trial. The laboratory report should not be suppressed on the basis that the buccal swabs were illegally obtained as urged by the defendant.

**United States v. Leon**

In his memorandum, defendant argues that the officers who executed the search and seizure involving the buccal swabs did not act in reasonable reliance upon the authority of the issuing judge, in that the police officers themselves included the improper information attributed to the anonymous source within the body of the affidavit, which, in turn, led to the issuance of the "tainted" search warrant.

The court has found that improper information was not included in the affidavit and as a result the search warrant was not tainted.

Officer Zajicek testified that he relied on the authority of the issuing judge when he obtained the buccal swabs from the defendant. (Tr. 43-44)

In United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 3411 (1984), the court created the good-faith exception to the exclusionary rule. Leon provides that an officer serving a search warrant may rely on the validity of the warrant issued under the authority of the judge unless that reliance would be unreasonable. The Leon case provides four situations in which reliance on the judge's authority would be unreasonable: (1) the officer included information in an affidavit that he knew was false or would have known was false except for his reckless disregard of the truth; (2) where the judge abandons his role and fails to act in a neutral and detached manner; (3) where the affidavit is so lacking in probable cause that it is objectively unreasonable for the officer to rely on it; or (4) the warrant is so facially deficient that the officer cannot reasonably presume the warrant to be valid. Leon, 468 U.S. at 923, 104 S.Ct. at 3420-21. See also United States v. Fulgham, 143 F.3d 399, 401-02 (8th Cir. 1998), quoting Leon. See also United States v. Etheridge, 165 F.3d 655, 658 (8th Cir. 1999).

None of the exceptions found in <u>Leon</u> which would disallow good faith reliance by an executing officer on the authority of the issuing judge apply to our fact situation.

## <u>Franks v. Delaware</u>

The defendant attacks Officer Zajicek's affidavit citing <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S.Ct. 2674 (1978). As defendant states in his memorandum, the United States Supreme Court held that under certain circumstances, a defendant may challenge the validity of a search warrant by attacking the veracity of a sworn statement used by police to procure the search warrant.

Once a search warrant is issued, an individual may not generally attack the validity of the warrant by attacking the accuracy of the information contained in the supporting affidavits–known as going behind the warrant. However, as the defendant states, there are certain circumstances in which a defendant may challenge the validity of a search warrant by attacking the veracity of the affidavit. The defendant also correctly states that a hearing challenging the search warrant in this manner is required when the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally or with a reckless disregard for the truth was included by the affiant in the warrant affidavit. (Memorandum, Doc. #36, at 8) The defendant then includes the following charge:

> Defendant asserts that each of the allegations purportedly made by the confidential informant in the instant case were either false or were not made at all. Defendant further asserts that Officer Zajicek drafted the affidavit in support of the search warrant in the instant case knowing that the information purportedly provided by the confidential informants was false, or with reckless disregard for the truthfulness or falsity of same. As such, the evidence seized in the instant case is subject to suppression.

The unsubstantiated statement set out above does not provide the substantial preliminary showing required by <u>Franks</u>. The defendant offers no evidence to support his charge. The requirements for the preliminary showing are serious and as the <u>Franks</u> Court says "substantial."

The Court, in <u>Franks</u>, stated that:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any non-governmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

438 U.S. at 171-172.

In contrast to the requirements of <u>Franks</u>, the defendant's statement quoted above is completely conclusory. As the Court requires, "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." The defendant has provided no affidavit or sworn or otherwise reliable statement of a witness nor has its absence been satisfactorily explained. The defendant has wholly failed to qualify for a "Franks" hearing by failing to meet the preliminary requirements entitling him to such a hearing, at which a search warrant affidavit may be attacked.

For the foregoing reasons set out in this report, the court finds the search warrant issued by Judge Gary Kamp on October 9, 2007, was supported by probable cause and, thus, was valid. The execution of that search warrant by Officer Zajicek in obtaining two buccal swabs from the defendant's mouth pursuant to the search warrant was not in violation of the defendant's constitutional rights. The DNA evidence obtained from the buccal swabs and the laboratory report

prepared the laboratory of the Highway Patrol reflecting and analyzing that evidence should not be suppressed and are admissible in evidence.

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress (Document #26) be denied.


The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(l), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of May, 2008.